UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Wendell Hunte, Barbara Hunte, and Roosevelt Hunte,<br>    *Plaintiffs*,<br><br>        v.<br><br>Kerwin Anders, Steven Pisarski, Wayne Newkirk, Daniel Chalker, Bart Barown, Douglas Brennan, Vincenzo Calabrese, Willie Quarles, Richard Dowd, John Murphy, Robert Milano, John Doe, and City of Torrington,<br>    *Defendants*. | Civil No. 3:05cv1017 (JBA)<br><br><br><br><br><br><br>October 8, 2009 |

RULING AND ORDER ON DEFENDANTS' MOTIONS TO
RE-OPEN AND FOR INVOLUNTARY DISMISSAL AGAINST ROOSEVELT
HUNTE [Doc. ## 79, 81] AND PLAINTIFFS' MOTION TO WITHDRAW
APPEARANCE AS TO PLAINTIFF ROOSEVELT HUNTE ONLY [Doc. # 80]

On June 24, 2005 Plaintiffs Wendell, Barbara, and Roosevelt Hunte brought suit against Defendants—twelve police officers and the City of Torrington—under the Fourth and Fourteenth Amendments, the Rehabilitation Act of 1973, and the Connecticut Constitution for injuries allegedly flowing from the officers' use of force on them on July 10, 2002 at the home of Wendell and Barbara Hunte.  (*See generally* Compl. [Doc. # 1].)  After some defendants were dismissed (*see* Order on Summary Judgment & Scheduling Order [Doc. # 53]), and with the assistance of Magistrate Judge Margolis, on July 20, 2007, "the parties agreed to settle this case and sign a general release in exchange for a sum of $50,000.00" (*see* Rec. Rul. [Doc. # 71] at 2.; *see also* End. Order [Doc. ## 72, 74] (approving and adopting Rec. Rul.)).  The Court then ordered the case closed and permitted the parties

to file a stipulation of dismissal. (*See* Order dated July 31, 2007 [Doc. # 67].) Barbara Hunte signed the general release on August 24, 2007, and after Magistrate Judge Margolis determined that the settlement reached on July 20, 2007 was a valid and binding settlement agreement and recommended granting Defendants' Motion to Re-Open and Enforce Settlement Agreement (*see* Rec. Rul.), Wendell Hunte signed the general release on August 5, 2008 (*see* General Release Signed by Barbara Hunte [Doc. # 76]; General Release Signed by Wendell Hunte [Doc. # 77]). The Court thereafter approved and adopted Magistrate Judge Margolis's Recommended Ruling on October 10, 2008. (*See* End. Order.)

Because Roosevelt Hunte did not sign the general release, the Court's Endorsement Order directed him "to sign the general release[] as [he] agreed in [the parties'] settlement agreement," provided him with "[t]he general release form to be signed," and ordered that the general release "be signed and filed with the Court no later than November 10, 2008." (End. Order.) In contravention of this Order, Roosevelt Hunte did not file a signed general release. Nonetheless, the approved and adopted Recommended Ruling reflects that Roosevelt Hunte is deemed to have signed the general release because the general release is the "document[] memorializing the agreement" whose actual execution the Recommended Ruling explained was unnecessary to make the settlement agreement's "simple, unambiguous terms" binding against all parties. (Rec. Rul. at 3–4.)

Defendants now move for an involuntary dismissal of Roosevelt Hunte's claims against them under Federal Rule of Civil Procedure 41(b). (Defs.' Mot. Re-Open

2

[Doc. ## 79, 81].)  They argue that Roosevelt Hunte's failure to sign the general release has prevented Defendants from disbursing to Barbara and Wendell Hunte their portions of the $50,000 settlement; that Roosevelt Hunte has failed to comply with the settlement for over two years; that he has disregarded the Court's Order; and that failure to dismiss his claims with prejudice would leave them "exposed to a possible motion to reopen . . . and thus to a possible trial in a matter that has been settled for almost two years." (Defs.' Mem. Supp., Att. to Mot. Re-Open, at 3–6.)  Defendants' motion is unopposed.

After Defendants moved for an involuntary dismissal, the Court issued to Roosevelt Hunt a Notice and Order on July 31, 2009, informing him that "his failure to sign the general release and file it with the Court by August 31, 2009 will result in dismissal of his claims against the defendants, with prejudice, under Rule 41(b)[.]"  (Not. & Ord. [Doc. # 82] at 2–3.)  The Court also provided him with a copy of the general release.  (*Id.* at 4–5.)  Roosevelt Hunte again did not sign and file the general release.

I.      Involuntary Dismissal under Rule 41(b)

Rule 41(b) provides, in relevant part, that "[i]f the plaintiff fails to prosecute or to comply with . . . a court order, a defendant may move to dismiss the action or any claim against it.  Unless the dismissal order states otherwise, a dismissal under this subdivision (b) . . . operates as an adjudication on the merits."  Motions under Rule 41(b) require the Court to consider five factors, asking whether

>   (1) the plaintiff's failure . . . caused a delay of significant duration;
>   (2) plaintiff was given notice that further delay would result in dismissal;

> (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.

*United States ex rel. Drake v. Norden Systems, Inc.*, 375 F.3d 248, 254 (2d Cir. 2004). In doing so, the Court must remain "mindful that dismissal for lack of prosecution is a 'harsh remedy' that should 'be utilized only in extreme situations,'" *Lewis v. Rawson*, 564 F.3d 569, 575–76 (2d Cir. 2009) (quoting *Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993)), because "'general principles cannot justify denial of a party's fair day in court except upon a serious showing of willful default,'" *id.* at 576 (quoting, in parenthetical, *Gill v. Stolow*, 240 F.2d 669, 670 (2d Cir. 1957)); *see also Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 668 (2d Cir. 1980) ("Only on rare occasions should a district judge deprive the languid litigant of his right to a trial on the merits."). The Court must therefore consider Defendants' motion "in light of the record as a whole," and "[n]o one factor is dispositive." *Drake*, 375 F.3d at 254.

As an initial matter, the procedural history of this case puts it somewhat at odds with the factors pursuant to which a Rule 41(b) motion is considered. Unlike most circumstances in which a defendant moves for involuntary dismissal of a plaintiff's case under Rule 41(b), Roosevelt Hunte (hereinafter "Mr. Hunte") has already had his "fair day in court." *Gill*, 240 F.2d at 670. After some of his claims survived a motion for summary judgment (*see* Order on Summary Judgment & Scheduling Order), Mr. Hunte entered into a binding settlement agreement with Defendants pursuant to which he was to sign a general release form in

4

exchange for his share of a $50,000 settlement. Defendants, having waited two years for Mr. Hunte to sign the form in compliance with this obligation, seek involuntary dismissal not as a means of avoiding liability or ending litigation prematurely (in fact, the merits litigation ended by July 20, 2007, when the binding settlement agreement was reached) but to ensure that the terms of the general release that Mr. Hunte is already deemed to have signed be enforced against him. In other words, Mr. Hunte has already bound himself to the terms now sought to be enforced through Defendants' motion. Because the October 10, 2008 Endorsement Order was the substantive equivalent of Mr. Hunte signing the general release, a grant of Defendants' motion for dismissal under Rule 41(b) simply reiterates the obligations to which Mr. Hunte has already bound himself.

With this in mind, the Court will consider the five factors listed above.

A.  Whether Failure to Prosecute Caused a Delay of Significant Duration

As the Second Circuit has noted, this factor "breaks down into two parts: (1) whether the failures to prosecute were those of the plaintiff, and (2) whether these failures were of significant duration." *Drake*, 375 F.3d at 255. Here, the answer to each part of the question is in the affirmative. Precisely speaking, the failure in this case is not a failure to *prosecute* but a failure to comply with the Court's Order that Mr. Hunte sign the general release so that the settlement already reached may be effectuated, which can nonetheless constitute a "[f]ailure to prosecute" for purposes of Rule 41(b). *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 42 (2d Cir. 1982) ("Failure to prosecute is not defined in Rule 41(b). It can evidence

5

itself . . . in an action lying dormant with no significant activity to move it."). This failure is certainly Mr. Hunte's alone. Barbara and Wendell Hunte have each signed the general release, and Defendants represent that they are, and have been, ready to disburse the $50,000 to the plaintiffs upon obtaining a general release signed by Mr. Hunte. The only reason for any delay in obtaining final compliance with the settlement agreement is Mr. Hunte's failure to sign the general release.

Moreover, Mr. Hunte's failure has caused a delay of significant duration. Mr. Hunte incurred the obligation to sign the general release on July 20, 2007 when he became bound by the settlement agreement, but the Court's order expressly directing him to sign the release did not issue until October 10, 2008. Thus, while Mr. Hunte has failed to comply with the Court's order for approximately one year, measured as a failure to sign the general release, terminate the litigation, and permit disbursement of the settlement funds, Mr. Hunte's failure has caused a delay of well over two years. Whether measured as 12 or 26 months, Mr. Hunte's failures have caused a delay of significant duration, and thus support dismissal. *See Drake*, 375 F.3d at 255 (holding that 17-month delay was significant, and citing *Chira*, 634 F.2d at 666–68 (six-month delay) and *Lyell*, 682 F.2d at 42–43 (noting that delays may range from "a matter of months" to "a period of years") (citations omitted)); *Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 194 (2d Cir. 1999) (a "nearly two-year period").

B.      Notice to Mr. Hunte that Further Delay Would Result in Dismissal

As described above, on July 31, 2009 the Court provided notice to Mr. Hunte of the consequences of his continued failure to sign the general release. Nevertheless, Mr. Hunte still has not signed and filed the general release. In addition to the fact that Mr. Hunte has disregarded multiple orders of the Court that he sign and file the general release notwithstanding its notice to him of the consequences of his failure to do so, Mr. Hunte has known since July 20, 2007 that his case settled—indeed, he was physically present for the settlement negotiations resulting in the binding settlement agreement—and that the merits litigation had thus terminated. (*See* Rec. Rul.) Moreover, the Court has twice issued orders closing the case, including one that clarified that the only thing left to be done in the case was obtain the signed general releases. (*See* End. Order ("[T]he Clerk is directed to reopen this matter for the purpose of enforcing the settlement agreement requiring signed releases from plaintiff[] . . . Roosevelt Hunte."); *see also* Order dated July 31, 2007.) In addition, the July 31, 2009 Notice and Order gave notice to Mr. Hunte that *further* delay would result in dismissal of his case.[1] This factor therefore weighs in favor of dismissal.

---

[1] As indicated by the Notice filed by Barbara Hunte [Doc. # 83], however, it is doubtful that Roosevelt Hunte ever learned of the Court's July 31st Notice and Order, since he has not been in contact with the other plaintiffs (to whom he is related) or Plaintiff's counsel, and Plaintiff's counsel reported that the copy of the Notice and Order, which he was directed to send by U.S. Mail to Mr. Hunte's last known address, was returned unclaimed. Nonetheless, as explained above, because Mr. Hunte was present at the settlement negotiations he did have actual knowledge of the settlement and his obligation to complete the general release.

7

C.      Likely Prejudice to Defendants by Further Delay

Defendants argue that Mr. Hunte's continuing failure to sign the general release in accordance with the settlement agreement has forced them "to engage in needless motion practice" and "expose[s] [them] to a possible motion to reopen from Roosevelt Hunte in the future, and thus to a possible trial in a matter that has been settled for . . . two years," and that because the incident at issue in this litigation took place seven years ago, "trial of this case becomes more difficult as time goes by." (Defs.' Mem. Supp. at 5–6.)   This is sufficient to presume prejudice in this case, for it "may be presumed as a matter of law in certain cases," with "the issue turn[ing] on the degree to which the delay was lengthy and inexcusable." *Drake*, 375 F.3d at 256 (citing *Lyell*, 682 F.2d at 43).  At least in part, this rule derives from the fact that "delay by one party increases the likelihood that evidence in support of the other party's position will be lost and that discovery and trial will be made more difficult." *Shannon*, 186 F.3d at 195 (citing *Romandette v. Weetabix Co.*, 807 F.2d 309, 312 (2d Cir. 1986) and *Peart v. City of New York*, 992 F.2d 458 (2d Cir. 1993)).  While this presumption is "rebuttable," *see, e.g.*, *Drake*, 375 F.3d at 257, as described above, Mr. Hunte's delay is of substantially more than two years, he has not opposed the Defendants' Rule 41(b) motion, and he has proffered no reason why he has not signed the general release.  There is thus no basis on which to find the presumption of prejudice rebutted.

>   D.  Balance Between Alleviation of Court Calendar Congestion and
>       Mr. Hunte's Right to an Opportunity for a Day in Court

As noted above, analysis of this factor does not fit squarely with the circumstances of this case because Mr. Hunte's right to an opportunity for a day in court is not actually implicated by Defendants' Rule 41(b) motion. Not only has Mr. Hunte already obtained somewhat of an adjudication of his claims at the summary judgment stage, but he voluntarily waived "his right to a trial on the merits," *Chira*, 634 F.2d at 668, when he agreed to the binding settlement agreement on July 20, 2007. There is thus no counterweight to consideration of the fact that dismissal would alleviate the Court's calendar congestion, and this factor weighs in favor of dismissal.

>   E.  Assessment of Efficacy of Lesser Sanctions

It is unclear what lesser sanctions, if any, might apply in this case. In light of the execution of the general release by Barbara Hunte and Wendell Hunte—who are represented by the same counsel as Roosevelt Hunte—it is apparent that Mr. Hunte's failures are his own, and not those of counsel. Mr. Hunte has been given three opportunities, and did not comply with two express orders, to sign the general release. Moreover, dismissal of his claims with prejudice does not operate to sanction Mr. Hunte in any meaningful way, given that the settlement agreement to which he is a party contemplates dismissal of his claims with prejudice. Dismissal under Rule 41(b) thus serves the same purpose as would his signing the general release, which he is already deemed to have done.

F.     Additional Considerations

This case presents an additional circumstance that warrants a Rule 41(b) dismissal: Mr. Hunte has already bound himself to the terms of the general release, and therefore this Rule 41(b) dismissal does not result in the "usual[]" consequences of such a dismissal, *see Drake*, 375 F.3d at 251, and this Rule 41(b) dismissal with prejudice simply reiterates that the Court's October 10, 2008 Endorsement Order conformed the legal status of Mr. Hunte's claims to the circumstances to which he bound himself on July 20, 2007.

G.     Conclusion as to Dismissal

Because no factor discussed above weighs against dismissal with prejudice under Rule 41(b), but many factors weigh in favor of dismissal, the Court concludes that dismissal under Rule 41(b) is warranted, and Defendants' motions will be granted.

II.    Withdrawal of Counsel

Attorneys James V. Sabatini and Vincent F. Sabatini, of Sabatini and Associates, LLC, have also moved to withdraw as counsel for Roosevelt Hunte, citing "the fact that the attorney-client relationship has broken down and the break down is irreconcilable." (Pls.' Counsel's Mot. Withdraw [Doc. # 80] at 1.)  The attorneys' motion provides no factual basis for this assertion, however. A web search on whitepages.com for "Roosevelt Hunte" revealed an address close to the address listed in the Complaint and the last known address for Mr.

Hunte, but different from the address used by his counsel. This may explain why prior attorney-client correspondence was returned, but does not demonstrate grounds for withdrawal of representation. Therefore, these attorneys' motion to withdraw will be denied.

III.  Conclusion

For the foregoing reasons, Plaintiffs' Counsel's Motion to Withdraw Appearance as to Plaintiff Roosevelt Hunte Only [Doc. # 80] is DENIED, and Defendants' Motions to Re-Open and for Involuntary Dismissal Against Roosevelt Hunte [Doc. ## 79, 81] are GRANTED. All claims made by Roosevelt Hunte in this action are dismissed with prejudice under Rule 41(b) and Roosevelt Hunte is deemed to have signed the general release, in light of which Defendants are directed to disburse the $50,000 sum in accordance with the settlement agreement. The Clerk is directed to mail a copy of this Ruling and Order, and another copy of the Notice and Order as to Roosevelt Hunte [Doc. # 82], to Roosevelt Hunte at each of the following two addresses:

| | |
|---|---|
| Mr. Roosevelt Hunte<br>107 Palmer Bridge Street, Apt. 9<br>Torrington, CT 06790 | Mr. Roosevelt Hunte<br>19 Willow St., Apt. FIN<br>Torrington, CT 06790 |

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 8th day of October, 2009.

11